

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007

HANNAH V. FADDIS
*Senior Counsel*
phone: (212) 356-2486
fax: (212) 356-3509
hfaddis@law.nyc.gov

April 25, 2019

**BY ECF**
Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    <u>Rachel Wellner v. Davodian, et al.</u>
                16-CV-07032 (JGK) (JLC)

Your Honor:

      I am one of the attorneys assigned to represent the defendants in the above-referenced matter. Defendants write to propose revised special interrogatories to be put to the jury in the event of a plaintiff's verdict on excessive force.

### I. Defendants' Proposed Special Interrogatories

      In light of the discussion during today's trial proceedings regarding the appropriate formulation of special interrogatories on the issue of qualified immunity, defendants propose the following questions:

        1. Did Officer Vega push plaintiff in her chest?

        2. If yes, did Officer Vega reasonably believe, even if mistaken, that it was reasonable to push the plaintiff?

        3. Did Officer Vega grab plaintiff by her torso?

        4. If yes, did Officer Vega reasonably believe, even if mistaken, that it was reasonable to grab the plaintiff by her torso?

        5. Did Officer Vega twist plaintiff's left arm?

        6. If yes, did Officer Vega reasonably believe, even if mistaken, that it was reasonable to twist plaintiff's left arm?

   7. Did Officer Davodian reasonably believe, even if mistaken, that the force Officer Vega used was reasonable?

  Defendants believe this formulation of special interrogatories for the purpose of evaluating a qualified immunity defense is appropriate. The question of whether a defendant officer "reasonably believed, even if mistaken" that their actions were lawful is the heart of a qualified immunity analysis. This approach has been adopted in various other matters.[1] The doctrine of qualified immunity gives officials "breathing room to make reasonable but mistaken judgments about open legal questions." Ziglar v. Abbasi, 137 S. Ct. 1843, 1866 (2017) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)). What the officer "reasonably believed" does not inquire as to their subjective intent, but rather to their understanding of the facts and circumstances giving rise to the use of force. This question is directed at whether or not the defendant's actions were objectively reasonable in light of clearly established law, which is the benchmark for qualified immunity. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (Pearson v Callahan, 555 U.S. 223, 231 (2009). Thus, the officers' belief as to their observations and actions at the time of the incident is critical to an assessment of qualified immunity. The questions proposed above incorporate both the Court's need for fact-specific interrogatories as to the plaintiff's allegations and the adjacent reasonableness inquiry.

  With regard to defendants' first proposed special interrogatories, defendants note that the more generalized approach taken therein attempted to avert several issues that could arise with fact-specific interrogatories. First, more general interrogatories may be appropriate where there are disputed facts as to the defendants' conduct. In the instant case, for example, the jury could rely on some or all of any party or witness's testimony in reaching the conclusion that Officer Vega used excessive force. The jury could believe that he did put his arm out to create distance, but that such force was excessive. Alternatively, the jury could believe that Officer Vega made contact with the plaintiff in a manner not specifically described by either party, but reasonably supported by the evidence, which they might find excessive. Thus, asking a more generalized question of the jury avoids the risk that a fact-specific questionnaire might inadvertently fail to identify the specific factual scenario which the jury accepted, and thus obstruct an evaluation of qualified immunity. Second, the more generalized approach avoids the danger of looking behind the jury verdict. As a general rule, litigants must accept the jury's collective judgment, and should not inquire into a jury's thought process. U.S. v. Powell, 469 U.S. 57, 67 (1984) (citing McDonald v. Pless, 238 U.S. 264 (1915)); see also Fed. R. Evid. 606(b).

  Notwithstanding the foregoing, the defendants are mindful that these special interrogatories must aid the Court in evaluating defendants' qualified immunity defense. Thus, defendants are amenable to any formulation of questions which would provide the Court with the

---

[1] See generally, Noboa v. Ward, et al., 15-cv-5159 (AMD)(RER) (asking "Did the defendant [] reasonably believe, even if mistaken, that the plaintiff had committed the crime of criminal possession of marijuana in the fifth degree?"); Salazar v. DeLeon, 15 Civ. 1989 (KBF) (asking "Did [defendant] reasonably believe, even if mistaken, that [plaintiff] struck him in the head?"); Blount v. City of New York, et al., 16-cv-5599 (PKC)(JO) (asking "Did Defendant [] reasonably suspect, even if mistakenly, that someone had committed, was committing, or was about to commit any criminal offense before stopping Plaintiff[?]").

- 3 -

information necessary to determine whether or not the defendants are entitled to qualified immunity, should the jury return a plaintiff's verdict on excessive force.

## II.   New York State Law Official Immunity

Under New York state law, an official is entitled to qualified immunity unless they have acted in bad faith or without a reasonable basis. Blouin v. Spitzer, 356 F. 3d 348, 364 (2d Cir 2004). "The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law." (Graham v City of New York, 928 F. Supp. 2d 610, 625-626 (E.D.N.Y. 2013) (citing Gilliard v. City of New York, No. 10-CV-5187, 2013 U.S. Dist. LEXIS 18180, at *12 & n.11 (E.D.N.Y. Feb. 11, 2013) (finding that "immunity doctrine [for state assault and battery claims] parallels federal qualified immunity jurisprudence"); see also Castro v. County of Nassau, 739 F. Supp. 2d 153, 178 & n.17 (E.D.N.Y. 2010) (noting that immunity under state assault and battery and federal excessive is the same); Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("[A]s is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution."); Delgado v. City of New York, 928 N.Y.S.2d 487, 495 (App. Div. 2011) (stating that the proper analysis for a police officer performing a discretionary function is to establish "that it was objectively reasonable for the police officer involved to believe that his or her conduct was appropriate under the circumstances, or that officers of reasonable competence could disagree as to whether his or her conduct was proper").

Defendants thank the Court for its consideration.

> Respectfully submitted,
> /s/
> Hannah V. Faddis
> *Senior Counsel*

cc:   Jon Norinsberg, Esq. (via ECF)
      John Meehan, Esq.
      *Attorneys for Plaintiff*