USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/20__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL WELLNER,

                Plaintiff,

    - against -

CITY OF NEW YORK, ET AL.,

                Defendants.

16-cv-7032 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Dr. Rachel Wellner, has moved for reconsideration of this Court's August 8, 2019 decision to the extent that it set aside an award to the plaintiff of $1,181,549 in lost earnings because those lost earnings were not sufficiently causally related to the plaintiff's claim that two police officers had allegedly fabricated evidence provided to an Assistant District Attorney, who prepared a criminal complaint against the plaintiff. The Court did grant a remittitur to $200,000 for damages that the plaintiff allegedly suffered from the loss of liberty resulting from the allegedly fabricated evidence, but the plaintiff has not accepted that remittitur. The plaintiff alleged that the Court overlooked a newspaper article in evidence that established the causal link between the alleged false charges and the plaintiff's termination of her employment and that the court applied an incorrect causal

analysis. For the reasons explained below, the motion for reconsideration is **denied**.

Reconsideration of a previous Opinion of the Court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quotation marks omitted). To succeed on a motion for reconsideration, the movant carries a heavy burden. The movant must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Doe v. N.Y.C. Dept. of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983). "A motion for reconsideration is not an 'opportunity for making new arguments that could have been previously advanced....'" Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) (quoting Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). Moreover, "[t]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." Vincent v. Money Store, No. 03cv2876, 2014 WL 1673375, at *1 (S.D.N.Y. April 28, 2014) (quotation marks omitted); see also Rosner v. United States, No. 16-cv-7256, 2019 WL 1451253, at *1 (S.D.N.Y. Mar. 18, 2019).

The plaintiff was arrested after an altercation with police on the morning of February 18, 2016. Tr. at 524-25, 546. Some time after 10:00 p.m. on the night of February 18, 2016, Officer Davodian, one of the defendants, allegedly provided false information to the Assistant District Attorney concerning some comments that the defendant made at the time of her arrest and allegedly falsely stated that Officer Vega, the other defendant, had been injured at the time of the arrest. Tr. at 330, 339-42. Officer Davodian's declaration in support of the charges against the plaintiff is dated February 19, 2016, at 12:25 in the early morning of February 19, 2016. Tr. at 338; Def. Ex. 288. Dr. Michler, the surgeon-in-chief at Montefiore' Healthcare System, who was involved in the decision to terminate the plaintiff, testified that he learned about the plaintiff's arrest shortly after it occurred from another doctor at Montefiore and then saw a news story about the arrest. Tr. at 824, 827. Dr. Michler testified that when he found out about the plaintiff's arrest, he immediately formed the opinion that the plaintiff should be terminated. Tr. at 841-42. Dr. Michler testified:

> [F]rom the moment that I learned of the arrest, I was concerned significantly by it. I was concerned that she was, first and foremost, arrested; second, that she had left the scene of the crime; and thirdly, that she had struck a police officer while leaving the scene of the crime.

Tr. at 829. Dr. Michler also testified:

3

> With an act like this in which a faculty member of
> mine has been arrested, has left the scene of the
> crime, and has allegedly stricken a police officer, I
> find that to be grounds for termination because they
> are no longer credible in the eyes of not only the
> patients, but referring doctors, in the eyes of the
> team they work with, other doctors, staff. It is a
> devastating event in our life as persons responsible
> in the care of patients.

Tr. at 832.

When it vacated the award of lost earnings resulting from the plaintiff's termination at Montefiore, the Court pointed out that there was no evidence that connected the criminal charges brought against the plaintiff, the plaintiff's detention, or the plaintiff's court appearances with her termination. The Court pointed out that "no evidence connects the fabricated evidence given to [the ADA] with the Montefiore surgeon who notified Dr. Michler of the plaintiff's arrest or the news sources through which Dr. Michler learned the details of the plaintiff's arrest when he decided to terminate her employment." Wellner v. City of New York, 393 F. Supp. 3d 388, 399 (S.D.N.Y. 2019). The plaintiff now argues that the court overlooked Plaintiff's Exhibit 33, a New York Post article dated February 19, 2016 at 1:21 pm. which discussed, among other things, a statement that the prosecutor made at the plaintiff's court appearance on February 19, 2016, to the effect that "I'm the hero; the cops are not." The plaintiff argues that this article is the critical evidence of the causal link because "the New York Post article

4

was the *only* news article that Plaintiff entered in evidence which was dated February 19, 2016, or 'day one.'" Pl. Mem. at 3. At trial, the plaintiff emphasized that Dr. Michler had made his decision to terminate the plaintiff on "day one." The plaintiff's counsel elicited the following testimony from Dr. Michler: "Q. And you were asked multiple questions about things that happened during the four month period. But the fact of the matter is you had already made up your mind to terminate Dr. Wellner on day one, isn't that true, sir? A. Yes." Tr. at 856. The plaintiff's argument that the February 19 New York Post article must have been the article that Dr. Wellner saw before his decision to terminate the plaintiff is simply inaccurate. In the course of Dr. Wellner's cross examination, the defendants introduced Plaintiff's Exhibit 32, Tr. at 632, a February 18, 2016, New York Post article with a 5:48 p.m. dateline that reported on the plaintiff's arrest, the fact that the plaintiff allegedly injured a police officer, and then fled the scene – all of the items that Dr. Michler initially stated were of concern to him. This article does not refer at all to any allegedly false statements by Officer Davodian to the prosecutor or indeed the prosecutor's statements in court, nor could it have done so, because the allegedly false statements were given to the prosecutor late in the evening of February 18, and Officer Davodian's declaration was only signed early in the

5

morning of February 19. The February 18 New York Post article was published at 5:48 p.m., before Officer Davodian had spoken to the Assistant District Attorney. The bottom line is that there was substantial publicity about the plaintiff's arrest, alleged injury to a police officer and leaving the scene of an accident before any statement by Officer Davodian to the prosecutor that is the basis for the plaintiff's claim of the denial of a fair trial based on fabricated information provided to the prosecutor. The existence of Plaintiff's Exhibit 33 does not affect that conclusion and is not a basis for reconsideration.[1]

Moreover, because the plaintiff has failed to present sufficient evidence from which a reasonable jury could have found that the termination of her employment was caused by the alleged false statements to the prosecutor, the plaintiff has failed to show that the Court incorrectly set aside the award of lost earnings based on the claim of the denial of the right to a fair trial based on the submission of fabricated evidence. The

---

[1] The plaintiff argues that Dr. Michler must have seen Plaintiff's Exhibit 33 because it is the only publicity in evidence that refers to the prosecutor's comment that the plaintiff had said "I'm the hero; the cops are not." And Dr. Michler testified that the comment "played a role in formulating my opinion to terminate Dr. Wellner." Tr. at 831. But Dr. Michler did not testify when he read such a comment and did not deny following press reports about Dr. Wellner. The testimony in no way undercuts Dr. Michler's testimony that he decided to terminate the plaintiff on "day one" and there is no evidence that when that decision was made there was any press account of a statement by Officer Davodian to the prosecutor.

6

plaintiff is entitled to recover for the loss of liberty and any resulting damages from that loss of liberty, but not for the loss of employment that the plaintiff has failed to show was caused by the alleged false statements to the prosecutor. The plaintiff argues that the Court imposed an incorrect test for causation because the chain of causation is not broken by the foreseeable acts of a third party, in this case Dr. Michler. See, e.g., Higazy v. Templeton, 505 F.3d 161, 177 (2d Cir. 2007) ("Defendants in Bivens actions may be liable for consequences caused by reasonably foreseeable intervening forces."). The plaintiff is incorrect that the Court imposed an incorrect standard. The plaintiff's claim for loss of employment failed because the evidence showed that Dr. Michler made his decision before he learned what Officer Davodian told the prosecutor and the prosecutor told the Court. The plaintiff's claim based on fabricated evidence depends on the losses that were caused by the false statements to the prosecutor, and not any losses from press reports that occurred even before the police officer spoke to the prosecutor.

The motion for reconsideration is therefore denied.[2]

**SO ORDERED.**

Dated:  New York, New York
        October 25, 2019

_____
John G. Koeltl
United States District Judge

---

[2] The defendants ask the court to grant Rule 11 sanctions against the plaintiff for having made the motion. There is no basis for sanctions for having made this motion. The request for sanctions is denied.